IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–01337–KMT

MARC E. MICHALIK,

    Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of the Social Security Administration,

    Defendant.

---

# ORDER

---

This case comes before the court on review of the Commissioner's denial of Plaintiff-Claimant Mark E. Michalik's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g).

## PROCEEDURAL BACKGROUND

Claimant applied for DIB in June of 2010 and SSI in August of 2012, alleging that he had been disabled by a rare and painful skin disease since his birth on August 14, 1968. (*See* Doc. No. 8, Social Security Administrative Record ["AR"] at 34; Doc. No. 12 [Opening Br.] at 2, filed Oct. 7, 2014; Doc. No. 13 [Resp. Br.] at 1, filed Oct. 29, 2014.) The Commissioner denied both applications. (Opening Br. at 1; Resp. Br. at 2.) Following the denials, Claimant requested and received a hearing by an Administrative Law Judge ("ALJ"). At the hearing, the ALJ heard testimony from the claimant about his symptoms and limitations and allowed the claimant to

revise the onset of his disability from the date of his birth to May of 2009.  The ALJ also consulted a vocational expert about what jobs might be available for a person with the claimant's limitations.  After the hearing, the ALJ determined that Claimant was not disabled within the meaning of section 1614(a)(3)(A) of the Act.  (Opening Br. at 2.)  The Appeals Council subsequently denied Claimant's request for review (AR at 1), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  *See* 20 C.F.R. §§ 404.981, 422.210(a).  Claimant timely sought review by the Court.

## STATUTORY AND REGULATORY BACKGROUND

Titles II and XVI of the Act award Social Security benefits to claimants who meet certain eligibility requirements.  42 U.S.C. §§ 423, 1382.  To receive either DIB or SSI, a claimant must be disabled.  42 U.S.C. §§ 1382(a), 423(a).  The Social Security Commissioner has established a five-step sequential process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who works is not disabled, regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe" impairment significantly limits the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or "equals" in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine whether the claimant can still perform any past work despite his or her limitations.

5. If the claimant no longer retains the ability to perform past work, then the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy despite the claimant's limitations.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). After that, the burden shifts to the Commissioner to prove that, despite the claimant's impairments, he or she is still capable of performing substantial, gainful work in the national economy. *Id.* If at any point the Commissioner conclusively finds that the claimant is or is not disabled during the five-step review process, the analysis ends. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

## STANDARD OF REVIEW

Review of the Commissioner's disability decision by this court is limited to determining whether the ALJ applied the correct legal standard, whether the decision is supported by substantial evidence, and whether the decision comports with the relevant regulations and caselaw. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). An ALJ's failure to apply the correct legal standard constitutes an independent and sufficient basis for the Court to reverse the ALJ's decision. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Likewise, an ALJ's failure to supply the Court with a sufficient basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284 (11th Cir.1983)).

Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. A finding is supported by substantial evidence if it is

supported by "more than a scintilla, but less than a preponderance" of evidence. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir.1988) (quoting *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir.1987)). Evidence is insubstantial when it is "overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court may not "reweigh the evidence" or "substitute its judgment" for that of the Commissioner." *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987). So long as there is substantial evidence to support the ALJ's decision, the decision must stand, even if the Court would have reached a different result. *See Ellison*, 929 F.2d at 536.

## ANALYSIS

Claimant alleges the ALJ erred in two ways. First, he argues that the ALJ failed to follow the "Treating Physician Rule" when weighing the opinion of Claimant's treating physician, Dr. Bruckner. (*See* Opening Br. at 8–13.) Second, Claimant argues that the ALJ failed to properly evaluate Claimant's credibility on the question of Claimant's ability to work. (*See id.* at 13–16.)

**1. Weighing the Treating Physician's Opinion**

Claimant contends that the ALJ erred when weighing the opinion of Claimant's treating physician, Dr. Bruckner. (*See id.* at 8–13.) Specifically, Claimant believes that the ALJ's decision to assign Dr. Bruckner's opinion less than controlling weight constitutes reversible error. (*See id.* at 9.)

The ALJ is entrusted with the difficult task of resolving evidentiary conflicts, weighing medical source opinions, and, ultimately, determining whether claimants are disabled within the meaning of the Act. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Generally speaking,

a Claimant's treating physician's opinion is afforded the most weight of any medical opinion. *See* 20 C.F.R. § 404.1527(c)(2). Indeed, when that physician's opinion is well-supported by medically accepted techniques and is consistent with other substantial evidence in the record, the opinion must be given controlling weight by the ALJ. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). This heavy weighting of a treating physician's opinion is commonly referred to as the "Treating Physician Rule." *See, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Notwithstanding the Treating Physician Rule, the ALJ is permitted to discount a treating physician's opinion in appropriate circumstances. *See Watkins*, 350 F.3d at 1300–01; 20 C.F.R. § 404.1527(c). When the treating physician's opinion is either inconsistent with other substantial evidence or not well-supported by medically accepted techniques, the ALJ may discount the opinion. *See Watkins*, 350 F.3d at 1300–01. When deciding how much to weight to assign a treating physician's opinion, the ALJ must consider six factors:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention that tend to support or contradict the opinion.

*Id.*; 20 C.F.R. §§ 404.1527(c), 416.927. Then, in the ALJ's written decision, the ALJ must clearly state how much weight the ALJ assigned the opinion and why. *See Watkins*, 350 F.3d at

1300–01. Although the ALJ must "give good reasons" for that weight, the ALJ need not discuss each of the six factors. *Id. (*quoting 20 C.F.R. § 404.1527(d)(2)); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Here, when the ALJ discounted Dr. Bruckner's opinion, he explained why he did so, gave good reasons, and backed up his argument with references to the record. In the medical opinions section of the written decision, the ALJ first acknowledged that Dr. Bruckner was Claimant's treating dermatologist, before stating that he afforded Dr. Bruckner's opinion "less weight" than the other medical opinions he considered. (AR at 25.) He reasoned that "[Dr. Bruckner's] reports and treatment notes do not support her opinion of such extreme limitations as she has described, and in fact those limitations are also not even consistent with portions of the claimant's own reports." (*Id.*) The ALJ then explained that Claimant's "15+ year history of substantial gainful activity" undermined Dr. Bruckner's opinion that Claimant's "skin condition prevents him from safely participating in activities or work that increase the risk of trauma to the skin." (*Id.* at 25–26.) The ALJ added that the doctor's opinion that Claimant "is not able to work" is especially suspect given that there was "no evidence of any significant deterioration in the claimant's condition since he was laid off work in 2009." (*Id.* at 26.) Next, the ALJ noted the differences between the severity of the symptoms and limitations opined by Dr. Bruckner (e.g., Claimant can stand for only one hour total) and the severity of the symptoms and limitations noted by the claimant himself (e.g., Claimant can stand for two hours). (*See id.*) The ALJ concluded by reiterating that he was knowingly giving Dr. Bruckner's opinion less weight than he might normally afford a treating source opinion from a specialist. (*See id.*)

The ALJ's detailed explanation indicates not only that was he aware of the Treating Physician Rule and applying it correctly, but that he was considering the six factors listed in 20 C.F.R. § 404.1527(c) when discounting the doctor's opinion.  The explanation made clear that the opinion's inconsistency with other evidence, including Claimant's own reports and work history, was his primary reason for affording the opinion less weight.  (*See, e.g.*, *id.* at 26–27).  Inconsistency with other evidence is a sufficient reason to discount a treating physician's opinion.  *See Watkins*, 350 F.3d at 1300 ("If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.").  Claimant insists that Dr. Bruckner's opinion that Claimant cannot work is consistent with Claimant's work history.  (Opening Br. at 9.)  But even if Claimant's work history can be read as consistent with the claim that he cannot work, the Court's inquiry on review is whether there is substantial evidence for the conclusion the ALJ made, not the conclusions that he *could have* made.  *See Jozefowicz*, 811 F.2d at 1357 (holding that the Court is not empowered to reweigh the evidence on review).

This court finds that the ALJ's discounting of Dr. Bruckner's opinion comports with the Treating Physician Rule and is supported by substantial evidence.

**2. The ALJ's Assessment of Claimant's Credibility**

Claimant also contends that the ALJ's decision finding Claimant's testimony "not fully persuasive" is neither supported by substantial evidence nor consistent with the applicable law.  (*See* Opening Br. at 13–16.)

Credibility determinations are the province of the ALJ, and the Court cannot upset those determinations so long as they are supported by substantial evidence. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Rather than bald conclusions in the guise of findings, the ALJ must cite specific reasons for doubting the claimant's credibility, especially when subjective pain testimony is crucial. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). When evaluating the credibility of a claimant's pain testimony, the ALJ should consider a multitude of factors, including the extensiveness of the attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility within the ALJ's judgment, and the consistency or compatibility of the testimony with objective medical evidence. *Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004).

Here, the ALJ articulated specific, evidence-based reasons for not fully believing Claimant's testimony about his alleged inability to work. Addressing Claimant's allegations of persistent leg pain due to his rare skin disease, the ALJ noted that the *severity* of Claimant's pain is what matters, not merely the *presence* of pain. (*See* AR at 22). The ALJ then pointed out that Claimant took no prescribed pain medication and had not complained of pain at his last visit with his treating physician, Dr. Bruckner. (*Id.*) The ALJ then contrasted Claimant's alleged symptoms and limitations with the fact that Claimant had been born with the condition, had worked for fifteen years with the condition, and had stopped working for reasons other than his symptoms. (*See id.*) The ALJ noted that there was no evidence of a significant deterioration in the claimant's medical condition since he was laid off, and went on to describe, in detail, why the evidence as a whole shows the opposite—that Claimant's condition was substantially the same from the date he was laid off until his examination by Dr. Bruckner. (*See id.* at 22–24.) The

ALJ then explained why Claimant's significant daily activities further undermined his claims of not being able to work.  (*See id.* at 24–25.)

This court is satisfied that the ALJ's lengthy and well-documented explanation is both legally sound and factually sufficient.  The ALJ offered far more than bald conclusions in the guise of findings.  He cited specific, well-supported reasons for his credibility determination and clearly considered the extensiveness of Claimant's attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility within the ALJ's judgment, and the consistency or compatibility of the testimony with objective medical evidence.  It appears from the briefs that Claimant would have this court reweigh the evidence and substitute its judgment for the ALJ's.  Doing so, however, would be beyond the Court's limited powers of review.  *See Jozefowicz*, 811 F.2d at 1357 (listing court's limited powers on review).

The court therefore finds that the ALJ's assessment of Claimant's testimony is supported by both substantial evidence and the law.

## CONCLUSION

Having considered and rejected both of Claimant's assignments of error, it is

**ORDERED** that the Commissioner's decision through the Administrative Law Judge is **AFFIRMED.**

Dated this 21st day of August, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge